[No. 3811.   Decided October 11, 1901]

J. S. HULL, *Appellant,* v. A. L. AMES *et al., Respondents.*

R. S. GLADWIN, *Appellant,* v. A. L. AMES *et al., Re-*
                        *spondents.*

MUNICIPAL CORPORATION — CONSTITUTIONAL LIMITATION ON INDEBT-
    EDNESS — EXEMPTION OF EXPENSES NECESSARY TO MUNICIPAL EX-
    ISTENCE.

    Warrants issued by a city for necessary expenses in main-
taining the existence of the municipality are valid, although the
city may at the time have been indebted in excess of the con-
stitutional limitation of 1½ per centum of its taxable property,
and such warrants are entitled to payment out of available funds
in the order of their issuance.

    Appeal from Superior Court, Spokane County.—Hon.
WILLIAM E. RICHARDSON, Judge.   Reversed.

    *Danson & Huneke* and *Winfree & McCroskey,* for ap-
pellant.

    *Robertson & Miller,* for respondents.

The opinion of the court was delivered by

    REAVIS, C. J.—These cases were consolidated, and tried
together.   The town of Cheney is a municipal corporation
organized under an act of the territorial legislature ap-
proved November 23, 1883, and amended December 23,
1885.   The respondents are respectively the treasurer,
mayor, and clerk of the municipality.   Appellant Hull
was the owner of a small warrant issued in August, 1892,
which warrant was issued for services performed by a
police officer.   Appellant Gladwin was the owner of three
city warrants,—one issued for services performed by the
treasurer, and two for services performed by the city mar-
shal; and he was also the owner of other warrants, amount-

ing to over $5,000 in value, a large portion of which were alleged to be in payment for salaries of the marshal, treasurer, and clerk, and other officers of the municipality. All these warrants, after their issuance, had been presented for payment, and indorsements made thereon by the treasurer, "Not paid for want of funds." The warrants issued were in due form, and in accordance with the provisions of the charter of the city, and no call has ever been made for the payment of any of them. Prior to the commencement of these actions, demand for payment was made of the treasurer, and refused. In the year 1897 the municipality levied taxes for the following year as follows: For general municipal purposes, 5 mills on every dollar on the taxable property according to the assessment roll for the year 1896, and also levied 10 mills on the same property for special municipal purposes, for "the purpose of paying the water rate, and lighting the city, and paying interest on outstanding city warrants and bonds, and paying the indebtedness of the city." From the organization of the city to and including 1897 a tax has been levied for special municipal purposes and for general municipal purposes, and a part of the taxes so assessed have been collected, and the remainder are now being collected. The city has also fixed certain license fees, fines, and penalties which have been collected and are being collected, from all which sources of revenue the amount in the city's treasury is realized. In April, 1899, an ordinance was adopted directing that the sum of $2,000 be appropriated out of any money in the city treasury received from any source other than the general tax levy, semi-annual interest fund, or special road fund, not otherwise appropriated, and placed in a fund designated the "contingent fund." On April 10, 1899, by resolution of the council, the city treasurer was directed to redeem

$2,000 of the city's bonds, with interest, and pay the same out of the contingent fund; and on the 6th of July, 1899, a similar resolution was adopted, instructing the treasurer to find certain warrants issued to judges, clerks, and other officers of election, and pay the same upon presentation. All of these warrants were issued subsequently to presentation for payment of the warrants held by appellants; and on July 6, 1899, $1,000 was transferred by resolution from the special municipal fund to the contingent fund. The treasurer is paying warrants out of the order of issuance or presentation under direction of the resolutions, and the city treasurer now has more than $4,000 in money levied and collected by the city for the purpose of paying its indebtedness. The suits were instituted for the purpose of enjoining the respondents from further paying warrants out of the order of their issuance, and the further payment of any sums on certain municipal bonds which are not yet due, and the prayer is for general relief.

The material defense interposed by respondents is the invalidity of the warrants owned by appellants. The above statement is based upon the findings of fact and admissions made in the record. The court found further that at the time of the issuance of the warrants owned by appellants the municipality was beyond the limit of its indebtedness authorized by its charter and under the constitutional limitation of 1½ per centum, and that no election had been held to validate any of the indebtedness; and, as a legal conclusion, found that at the time the warrants were issued the municipality had exceeded the limit of indebtedness which it was authorized to incur under its charter and the constitution of the state, that the act of its officers in incurring or contracting such indebtedness and issuing the warrants was void, and that re-

spondents were entitled to a decree dismissing the suits. It is not deemed necessary to review any exceptions made by appellants to the findings of fact, as the controversy may be determined upon the findings made and the conclusions of law. The material question presented is, were the warrants owned by appellants issued for necessary expenses in maintaining the existence of the municipality? In other words, is the rule announced by this court as controlling such expenditures for counties applicable to municipal corporations such as the town of Cheney and others organized under the laws of the state? It is maintained by counsel for respondents that there is a distinction between a county and a municipal corporation; that such difference is founded in the origin of the county and the municipality; that the municipal corporation is voluntarily organized, and the county is an involuntary *quasi* corporation. 3 Dillon, Municipal Corporations (4th ed.) § 23, *Commissioners of Hamilton County v. Mighels,* 7 Ohio St. 109, and *Talbot County Commissioners v. Queen Anne's County Commissioners,* 50 Md. 245, are cited to illustrate the distinction. It is true that the functions characteristic of corporate existence conferred upon counties are fewer than those ordinarily possessed by municipal corporations. However, the powers conferred upon counties are continually increased, and the same may also be said of municipal corporations. Section 11 of art. 11 of the state constitution recognizes and confers in some respects similar governmental powers on the county and municipal corporations as follows:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

The same restriction with reference to assessment and collection of taxes is imposed in § 12 of the same article:

"The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations . . . for county, city, town or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

There would seem to be reasons for the existence and life of the municipal corporation as a part of the governmental agency. In the case of *Rauch v. Chapman,* 16 Wash. 568 (48 Pac. 253, 36 L. R. A. 407, 58 Am. St. Rep. 52), there was a full review of the effect of the constitutional debt limitation in reference to certain compulsory expenditures made by the county. A recurrence to that decision indicates that many of the authorities referred to therein were cases involving the necessary expenses in maintaining the life of municipalities, and no distinction in principle is suggested between the county and the municipality. In *Duryee v. Friars,* 18 Wash. 55 (50 Pac. 583), the decision in *Rauch v. Chapman, supra,* was mentioned as follows:

"What the court decided in that case was that where a county had reached the limit of its indebtedness it could thereafter issue its obligations for those expenses necessary to maintain its existence; . . . And with that holding we are well content, for that the maintenance of its government is of paramount importance needs no argument, and it cannot be done without money, or resorting to the county's credit in some way."

The essential powers reposed in municipal corporations by the constitution are necessary to the existence of the municipality. A number of warrants in suit owned by the appellants were found by the court to have been issued for that purpose. Those for services as policemen, mar-

shal, and treasurer come within the requirement of necessities. Without these the police powers of the municipality fail. Its capacity to assess and levy taxes ceases unless the officer may be compensated in the collection and disbursement of funds. It is concluded that the rule announced in relation to such necessary expenditures by counties in the maintenance of their existence is applicable to municipal corporations, and, as observed in *Rauch v. Chapman,* "the payment of these is a prior obligation, and other liabilities incurred in the county are subject and inferior to its primary obligations, which must of necessity always continue." The findings before us are not specific as to the purpose for which all the warrants for which payment is claimed by appellants were issued. The judgment is therefore reversed, and the cause remanded, with directions to the superior court to find the nature of all obligations for which the warrants in suit were issued, and that those issued for necessary expenses in maintaining the existence of the municipality be adjudged valid, and that respondents be enjoined from payment from the funds in the city treasury, raised to pay indebtedness, of warrants or indebtedness issued subsequently to appellants' warrants so adjudged valid.

FULLERTON, ANDERS, DUNBAR, and MOUNT, JJ., concur.