[No. 10105.  Department One.  February 2, 1912.]

FRANK H. PILLING, *Appellant*, v. THE CITY OF EVERETT
et al., *Respondents*.[1]

MUNICIPAL CORPORATIONS—INDEBTEDNESS—LIMIT—MANDATORY EX-
PENSES. Indebtedness incurred by a city for the salary of its offi-
cers, wages of employees for necessary services and for material and
supplies in the conduct of its necessary affairs, is valid although in
excess of the constitutional limit of indebtedness.

SAME—INDEBTEDNESS—VALIDATIONS—DEBTS THAT CAN BE VALI-
DATED. Indebtedness incurred by a city in excess of the constitu-
tional limit of five per cent may be validated by an election if, at
the time of the election, the debt did not exceed such constitutional
limit, and if it was incurred for a bridge or like property, com-
paratively new and in the possession and beneficial use of the city.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered November 23, 1911, upon an
agreed statement of facts, dismissing an action in equity.
Affirmed.

*J. W. Dootson*, for appellant.

*Benj. W. Sherwood* (*Earl W. Husted*, of counsel), for re-
spondents.

PARKER, J.—The plaintiff, a taxpayer of the city of Ev-
erett seeks to have the city and its officers enjoined from pay-
ing certain warrants, alleged to have been issued for indebt-
edness of the city which was incurred at a time when its in-
debtedness was in excess of five per cent of the assessed value
of the taxable property within the city.  A trial upon the
merits resulted in a denial of the relief sought and a dismissal
of the action.  From this disposition of the cause, the plain-
tiff has appealed.

After issues were made by the pleadings, an agreed state-
ment of facts was signed and filed by the attorneys for the
respective parties, upon which the trial court evidently dis-

[1]Reported in 120 Pac. 873.

posed of the cause without any other facts being before it. The warrants here involved were issued between April 8, 1909, and October 8, 1910, presumably for indebtedness incurred about the time of their issuance. This indebtedness was incurred at a time when the city was in debt to an amount exceeding five per cent of the assessed value of the taxable property therein. The corporate authorities deeming it advisable that this indebtedness be validated by the voters of the city, on May 8, 1911, passed an ordinance submitting that question to the voters at a special election to be held June 13, 1911. An election was held on that day accordingly, when all of this indebtedness was ratified by the affirmative vote of more than three-fifths of the voters of the city voting at that election. At that time the total indebtedness of the city did not exceed five per cent of the assessed value of the taxable property therein. This ratification election was held under the provisions of chapter 120, p. 614 of the Laws of 1911. It is not contended that there was any failure to comply with the provisions of this law in submitting the question of the ratification of the indebtedness to the voters of the city. No formal findings of fact were made by the trial court, but recitals were made in its judgment as follows:

"That the warrants set forth in plaintiff's complaint were each for mandatory expenses of said city, and that the election was duly held validating said warrants at a time when the city of Everett was within its five per centum limit of indebtedness, and that said warrants are legal and valid warrants and obligations against said city of Everett."

Exception was duly taken by counsel for appellant to the recitals in the judgment which in effect find that the warrants were issued for mandatory expenses of said city and are valid obligations against the city.

The principal contention of counsel for appellant is that the court erred in holding that the indebtedness evidenced by these warrants was for "mandatory expenses of said city." It is conceded that by the use of these words, the learned

trial court meant that the indebtedness was of that nature which the city might lawfully incur notwithstanding the city had passed the debt limit, prescribed by § 6, art. 8 of the constitution, under the following decisions of this court: *Rauch v. Chapman*, 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Farquharson v. Yeargin*, 24 Wash. 549, 64 Pac. 717; *Hull v. Ames*, 26 Wash. 272, 66 Pac. 391, 90 Am. St. 743.

The only evidence we have touching the nature of the various items of indebtedness for which these warrants were issued is that contained in a list of the warrants set forth in the agreed statement of facts, and the very general statement contained in the ordinance providing for the election. The list of warrants contains evidence of a very brief and limited character touching the nature of the several items of indebtedness. After the number of each warrant, its date, its amount, and the name of the payee, there follows a very brief statement of the nature of the service rendered or property furnished the city for which the particular warrant was issued. There is, however, enough there stated to warrant the conclusion, in the absence of other evidence, that the warrants were all issued in payment of the salaries of the officers of the city, the salaries and wages of other employees of the city for services rendered by them in the necessary conduct of the city's ordinary affairs, or for material and supplies furnished the city which were necessary for its use in the conduct of its ordinary affairs, with the exception of some items, which we will notice later. This being true, it seems unnecessary to discuss the effect of the validating election upon the validity of these items of indebtedness, as, under the decisions above cited, they would be valid in any event.

The other items of indebtedness here involved we think were rendered valid by the vote of the people at the time the city was within its five per cent debt limit, even though that limit was unlawfully exceeded when such debts were originally attempted to be incurred. It appears that the city con-

structed a bridge over the Snohomish river, attempting to incur an indebtedness therefor of some $48,000. We will assume that at that time this indebtedness was invalid because it exceeded, not only the one and one-half per cent debt limit, but also exceeded the five per cent debt limit, and that it was an obligation which could not be then incurred or validated even by a vote of the people. Constitution, art. 8, § 6. This is one of the items attempted to be ratified by the election. This record, though not directly so showing, warrants the conclusion that, at the time of the holding of this election, the bridge was in the possession of the city and used by it as its property. The date of its construction renders it clear that it was, at the time of the election, comparatively new. We see no reason why the people, by their vote at that election validating that indebtedness, may not be held to have, by their votes, then accepted the bridge and in effect created that indebtedness. Surely the bridge and its future use was a sufficient present consideration to support such a promise as the people, by their votes, then made to the holders of the warrants issued in payment therefor. This would seem to be the logical result, since it is clear that there was then ample power to acquire the bridge and incur such debt therefor without exceeding the five per cent debt limit.

All of the other items of indebtedness involved which required validation by vote of the people were rendered valid by the election because the record warrants the conclusion that they were incurred for property then comparatively new, and in the possession and use of the city, as the bridge then was. We are of the opinion that the debts evidenced by the warrants involved in this case are rendered valid; either by the fact that they were for such necessary expenses as fall within the previous holdings of this court above cited, and were valid even though they exceed the constitutional debt limit, or fall within that class to which the bridge belongs, which were validated—or we might better say—re-created by the validating election at a time when their crea-

tion did not result in the total debt of the city exceeding the five per cent debt limit.

We express no opinion upon the power of the people to validate a debt attempted to be incurred in excess of the five per cent limit, by an election held at a time when the city's debt exceeds that limit, and for something that the city could not receive any benefit from after such election. In such a case, it might be argued that the city would receive no lawful consideration for its promise to pay such a debt. This is quite a different question from the validation of this bridge debt and others of the same class.

We conclude that the judgment must be affirmed. It is so ordered.

DUNBAR, C. J., CROW, CHADWICK, and GOSE, JJ., concur.