[No. 10862.   Department Two.   February 8, 1913.]

DANIEL B. PATTERSON, *Appellant*, v. THE CITY OF EDMONDS
*et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS — INDEBTEDNESS — LIMITATIONS — DEBTS
SUBJECT—UNNECESSARY EXPENSES.  Const., art. 8, § 6, prohibiting
any indebtedness by a city in excess of a certain limit, has no ap-
plication to such obligations as are made mandatory by the constitu-
tion and laws and necessary to maintain its corporate existence;
but does not embrace expenses for a city dock, the improvement
and repair of city streets not dangerous or requiring immediate at-
tention, auditing books, sewer estimates, street lights, a typewriter,
killing dogs, printing, court fees, and salaries which the city chooses
to make but not reduced to a bare necessity, all of which relate
more to the welfare of the city than to its corporate existence.

SAME.  Indebtedness in excess of the constitutional limit may
be created for the expense of holding a city election and for sal-
aries of necessary city officers and supplies necessary to carry on
the government.

SAME—ACTIONS TO RESTRAIN CITY—JUDGMENT.  In an action to
restrain the issuance of bonds to refund warrants issued in excess
of the constitutional limit, the judgment should be confined to that
issue, and should not undertake to confirm the proceedings of the
city council.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered October 14, 1912, upon find-
ings in favor of the defendants, after a trial on the merits
before the court without a jury, in an action to enjoin the
issuance and sale of municipal bonds.   Reversed.

*W. J. Daly*, for appellant.

*Parker & Brown*, for respondents.

FULLERTON, J.—The city of Edmonds, in Snohomish
county, is a municipal corporation duly organized under the
general laws of the state of Washington as a city of the third
class.   The assessed valuation of its property for the year
1910, as it appeared upon the last assessment roll taken for

[1]Reported in 129 Pac. 895.

city purposes, was $399,763. Between May 5, 1910, and December 29 of the same year, the city became indebted for ordinary municipal purposes in the sum of $5,849.23, or practically in a sum equal to one and one-half per centum of its taxable property as shown on its assessment roll, all of such indebtedness being represented by interest bearing warrants drawn upon the city treasurer. Thereafter, without in any manner reducing the indebtedness thus created, it incurred further indebtedness and issued interest bearing warrants therefor, which on March 12, 1912, amounted to the aggregate sum of $13,145.61, making the total indebtedness of the city on that date the sum of $18,994.84.

On the date last named, the city determined to issue funding bonds to take up and cancel the outstanding warrants above mentioned, and to that end passed a resolution so providing, and thereafter published a notice calling for bids for the bonds proposed to be issued for that purpose. At the time appointed, a satisfactory bid for the bonds was received and accepted by the city, and thereafter a contract was entered into for the sale of the bonds, between the city and the firm making the bid.

Before the sale was consummated, however, the present action was begun, ostensibly to restrain the issuance and sale of the bonds. The plaintiff says in his brief that it is a "friendly suit" to test the validity of the warrants, while the defendant says that it is a "proceeding to validate" them. The complaint sets forth the facts substantially as we have outlined them, and prays that the city be restrained from issuing and delivering the bonds. The answer of the city sets out the warrants in detail according to their number and date of issuance, dividing them into some thirteen different classes according to the purposes for which they were issued, and recites, in a more or less general way, the specific purpose for which each of the several warrants was issued. On the hearing, the city clerk and city treasurer were called as witnesses and testified concerning the purposes for which the

warrants sought to be funded were issued. The trial judge ruled that the warrants were valid obligations of the city, that the proceedings had by the city council with reference to funding the bonds were regular, and entered a judgment in which it was "ordered, adjudged and decreed that the said warrants issued by the city of Edmonds and hereinafter described under the" several subdivisions as set forth in the answer "be and are necessary and lawful indebtedness of said city . . . and are a valid and subsisting obligation against said city" for the amounts thereof, with interest as provided by law.

The judgment also contains the following:

"And it further appearing to the court that the said proceedings of the city. council of the city of Edmonds relative to the funding of said warrants and the sale of said bonds were and are regular and valid, and that the notice for the sale of said bonds was and is good and sufficient. It is therefore ordered, adjudged and decreed that the said notice for the sale of said bonds be and is sufficient and valid, and that the acts and proceedings of the city of Edmonds relative to the sale of said bonds be and the same are hereby approved and confirmed.

"And it also appearing to the court that the bid of Carstens and Earles for said bonds was the most advantageous bid received for the same. It is therefore, ordered, adjudged and decreed that the sale of said bonds to Carstens and Earles be and the same is hereby approved and confirmed.

"It is ordered, adjudged and decreed that said bonds be and are regular and valid and a subsisting obligation against the city of Edmonds for the amount of said bonds and according to the tenor and effect of said funding bonds, to wit: for the sum of $18,994.94 and accrued interest on said warrants to the date of payment thereof."

From the judgment so entered, the plaintiff appeals.

The provision of the constitution limiting the indebtedness that may be incurred by municipalities of the character of the one here in question is found in § 6, of art. 8, and reads as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: Provided, That no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly county, city, town, school district, or other municipal purposes: Provided further, That any city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality."

This clause of the constitution would seemingly render void any and all indebtedness incurred for any purpose which exceeded the limitations therein prescribed. This court has, however, laid down the rule that the limitation imposed has no application to such obligations as are made mandatory on the municipality by the constitution and laws of the state, or to such as are necessary to maintain its corporate existence. *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Duryee v. Friars,* 18 Wash. 55, 50 Pac. 583; *Hull v. Ames,* 26 Wash. 272, 66 Pac. 391, 90 Am. St. 743; *Gladwin v. Ames,* 30 Wash. 608, 71 Pac. 189; *Pilling v. Everett,* 67 Wash. 109, 120 Pac. 873. It is on the latter principle that the trial court upheld the validity of the indebtedness incurred in excess of the constitutional limit. It held that all of such indebtedness was incurred for matters necessary and essential to the corporate existence of the municipality, and hence valid obligations against it.

With this conclusion of the trial court, we have been unable to agree. There are, we think, many items of expenditure among those listed that clearly cannot properly be said to be necessary to the maintenance of the corporate existence of the city, and many more which, owing to the meagerness of the record, are at least in the doubtful class. Indeed, it would appear that the city authorities did not regard passing the indebtedness line as a matter of very serious moment. They apparently conducted the affairs of the city thereafter pretty much as they did before; expenditures being made and debts incurred for matters pertaining rather to the general welfare of the city than to the maintaining of its mere corporate existence. For example, a city dock was constructed at a cost of $6,351.70; an indebtedness incurred for supplies and labor on the streets in the sum of $537; an indebtedness for city printing in the sum of $359; for supplies for the health officer in the sum of $78.50; for court fees in the sum of $220.55; for lighting the public buildings and public streets in the sum of $1,179,37; for auditing the books of the city, $71; for sewer estimates, $123; for installing street lights, $136.10; for a typewriter, $102.50; for engineering expenses, $317.24; for killing dogs, $3; and for fees for various city officers, sums aggregating $3,316.51.

Manifestly, if the city may lawfully become indebted for much of the foregoing after it has reached its limit of indebtedness, the constitutional prohibition has no meaning. The city dock is doubtless highly useful and convenient to the people of the city, and the cost of its construction permissible expenditure on the part of the city were it in a position to act for the general welfare of the people, but it is an absurdity to say that its construction was necessary to maintain the corporate existence of the city. So with the expenditures for work and supplies in the improvement and repair of the city streets. It might be that if some part of a street should become dangerous so suddenly as to require immediate attention, it would justify the incurrence of an in-

debtedness to repair it as a work of necessity; but certainly the injury caused by all ordinary wear and tear, the necessity to repair which can be forseen for a period of time preceding the point of danger, can be repaired at the cost of property benefited without resorting to this extraordinary remedy. The items for auditing the books of the city, for sewer estimates, for installing street lights, for a typewriter, and for killing dogs, are clearly all expenditures relating to the welfare of the city rather than to the maintenance of its corporate existence. Moreover, it would seem that the work of auditing the books and of killing dogs could properly have been imposed upon some one or more of the officers of the city who were drawing a salary therefrom, instead of making it a charge upon the general fund. So, also, with regard to the expenditure for city printing, for supplies to the health officer, for lighting the streets, for court fees, for fees and salary of city officers; these might be justified up to a certain limit on the ground of necessity, but clearly all such expenditures as the city chooses to make in this behalf cannot be so regarded. Expenditures of this kind must be reduced to a bare necessity, to those expenditures without the incurrence of which the city government cannot be carried on, before the expenditure is justified. So with other items of indebtedness not herein specially enumerated; they may or may not be legitimate expenditures, accordingly as they may have been incurred, or for mere public convenience.

These considerations require a reversal of the judgment entered in the court below. The record however is not sufficiently full to enable us to direct such a judgment as the probable justice of the case requires. The indebtedness incurred up to the constitutional limitation is, of course, legitimate and could be lawfully converted into funding bonds. A considerable part of the indebtedness incurred after that time is also clearly legitimate; such, for example, as that incurred in holding city elections, salaries of necessary municipal officers, and expenditures for supplies necessary to

carry on the city government. Other items represent a mixed class which may be legitimate or not, depending, as we have said, on the question whether the particular thing for which the indebtedness was incurred represented a necessity or only a convenience. As to these, further evidence concerning the particular service rendered or the particular thing purchased must be taken before the status of the debt can be known. Other items again, and some of them we have pointed out, do not represent a legitimate expenditure tested by any theory. We have concluded therefore to reverse the judgment, and remand the cause for such further proceedings as the parties may deem fit to take in consonance with this opinion.

It is but justice to the trial judge to say that it rested its judgment on the authority of *Gladwin v. Ames, supra,* wherein this court sustained as legal certain indebtedness incurred by the town of Cheney, although issued after the town had reached its limit of indebtedness. It must be confessed that the opinion in that case contains language which, read apart from the record then before the court, would seem to justify as legitimate expenditures on the part of a municipality some of the expenditures which we have here condemned. But while we said in that case that the particular indebtedness incurred for the purposes specified were legitimate expenditures, it was not intended to be said that all such indebtedness as might be incurred for the purposes mentioned would be legitimate. For example, an indebtedness was there approved which was incurred for the purchasing of materials and the erection of a city jail; but, clearly, had the jail been an elaborate structure in excess of the immediate necessities of the city, the debt incurred would not have been legitimate. The case, however, even within its proper limitations, goes beyond any holding theretofore made by the court, and perhaps beyond a legitimate construction of the section of the constitution in question. We prefer, therefore, rather to curtail the rule as there announced than to extend it.

We have set forth something of the nature and form of the judgment entered by the court below. We think it could hardly be said to be proper in these respects were it otherwise regular. The action was to restrain the issuance of bonds to refund certain warrants thought to be illegally issued. The judgment should have been confined to this issue. Clearly, the courts have no authority by judgment to "approve and confirm" the action of municipalities. The judgment is reversed and the cause remanded.

MOUNT, MAIN, MORRIS, and ELLIS, JJ., concur.