[No. 14514. Department Two. April 27, 1918.]

# THE STATE OF WASHINGTON, *on the Relation of Edward Taro, Respondent,* v. THE CITY OF EVERETT *et al., Appellants.*[1]

MANDAMUS—PARTIES — RIGHT TO REMEDY — CITY EMPLOYEES. A member of the fire department indirectly affected, though not a citizen or taxpayer of the city, has capacity to institute mandamus proceedings to compel the city council to put into effect an ordinance increasing the force in the fire department; inasmuch as the statutory writ of mandamus is not a prerogative writ but a civil procedure available to any person having the right, the same as the right to commence a civil action.

MUNICIPAL CORPORATIONS—INDEBTEDNESS—LIMITATIONS—FIRE DEPARTMENT—EXPENSES. The maintenance of an efficient force in the fire department of a city of the first class is a governmental function, to which the constitutional limitation upon municipal indebtedness has no application, which accordingly is no defense to mandamus proceedings compelling enforcement of an ordinance providing for the same.

MANDAMUS—TO CITY COUNCIL—DISCRETION—EFFICIENT FIRE DEPARTMENT. The courts will not interfere with the discretion of the city authorities in determining the necessity of increasing the fire department, except for abuse of discretion or when the abuse is so gross that reasonable minds cannot differ thereon; and the decision of the electors of a city of the first class that a double platoon system is necessary for adequate fire protection is not unreasonable on its face.

Appeal from an order of the superior court for Snohomish county, Bell, J., entered July 6, 1917, granting a writ of mandamus to compel a city council to enforce an ordinance, upon sustaining a demurrer to the answer. Affirmed.

*Wm. A. Johnson,* for appellants.
*Sherwood & Mansfield,* for respondent.

FULLERTON, J.—This is an appeal from an order of the superior court of Snohomish county, granting a

[1] Reported in 172 Pac. 752.

peremptory writ of mandamus against the city council of the city Everett compelling that body to put in force an ordinance of the city. The cause was before the trial court, and is before us, upon the allegations of the petition for the writ and the allegations of the answer thereto, the trial court having sustained a general demurrer to the answer and the answering defendants having elected to stand thereon.

The record discloses that the city of Everett is a city of the first class, operating under a freeholders' charter duly adopted by its electors. The charter creates a commission form of government. Three commissioners are provided for—a commissioner of public works, a commissioner of safety, and a commissioner of finance—who together comprise the city council and who, in addition to having legislative functions, are charged with the executive administration of the city's affairs. The charter also provides for the method of legislation known as the initiative. This method, in so far as it is material here to inquire, authorizes the submission to the city council of proposed legislation in the form of ordinances, by a definite number of the qualified electors of the city, which the council may either pass without alteration under its legislative powers or submit to the electors of the city at a general or special election, when, if an affirmative vote is in its favor, it thereby becomes a part of the city's laws (Charter, art. 4, §§ 22, 23; art. 11, §§ 87, 88, 93).

Pursuant to the foregoing provisions of the city charter, a proposed ordinance was duly submitted to the council relating to the city's fire department. The department then consisted of one chief, one assistant chief, four captains, four lieutenants, one engineer, one assistant engineer, six auto drivers, seven pipemen, and one master mechanic, organized as a single platoon, the members remaining constantly on duty save

for stated limited intervals. The proposed ordinance increased the number of pipemen from seven to sixteen and divided the department into two platoons, one for day and one for night service, thus reducing the number of hours of continuous service required of the individual employees. The ordinance was later submitted to the electors for adoption, and was by them adopted by the required majority on November 7, 1916, going into effect on January 1, 1917 (Ordinance No. 1,758).

It further appears that the city council and the members thereof, having the duty so to do, refused to increase the number of the members of the department as required by the ordinance, and refused otherwise to carry out its provisions. As a reason for so refusing they set up in substance that, before the adoption of the ordinance, the city council had made its estimates and its tax levy to meet the expenses of the city government for the year 1917; that, in this estimate and levy, it had provided for the fire department the sum of $36,147, and for a contingent fund the sum of $1,000, all of which was not more than sufficient to maintain the department as it then existed; that to increase the department as required by the ordinance would cost approximately $10,000, and that they had no means of providing for this additional expense; that the city was then indebted in a sum exceeding its constitutional limitation, and could not legally incur a further indebtedness; and that, for these reasons, the obligation necessary to be incurred to carry out the provisions of the ordinance would, in their judgment, be illegal.

Certain preliminary objections were made to the proceedings prior to answering by the appellants, all of which were waived in this court, save the objection to the relator's capacity to maintain the proceeding. In his petition the relator averred that he was a mem-

ber and employee of the fire department of the city of Everett and brought the proceeding on behalf of himself and on behalf of the other members and employees of such department. The truth of the allegation is not disputed, but attention is called to the fact that the relator does not allege that he is a citizen and taxpayer of the city of Everett, and it is argued that a mere employee of the city has no capacity as such to invoke the remedy of mandamus against the officers of the city to enforce a public duty, however much he may be benefited individually thereby; that his remedy, if any he has, for the wrongs suffered by him individually is a private action, not the extraordinary remedy of mandamus. But however forceful this objection might be as applied to proceedings under the writ as anciently administered, this court has held that it is without application to the statutory writ of mandamus; that the writ of mandamus under the code is not a prerogative writ issuable at the pleasure of the state in aid of a private individual, but a civil procedure under the code, and that any person who has a cause for its invocation has the same right to sue out the writ as he has to commence a civil action to redress a private wrong. *State ex rel. Race v. Cranney*, 30 Wash. 594, 71 Pac. 50; *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207; *State ex rel. Spokane Terminal Co. v. Superior Court*, 40 Wash. 453, 82 Pac. 878; *State ex rel. Gillette v. Clausen*, 44 Wash. 437, 87 Pac. 498; *State ex rel. Washington Paving Co. v. Clausen*, 90 Wash. 450, 156 Pac. 554; *State ex rel. Beach v. Olsen*, 91 Wash. 56, 157 Pac. 34.

The benefit to accrue to the relator by putting in force the provisions of the ordinance are indirect, it is true. But it is a substantial benefit nevertheless. It will lessen his hours of labor, the number of hours he is required to remain continuously on duty without

intermission. Nor does he hold his position at the whim or caprice of the appointing power and thus subject against his will to be deprived of the benefits of the ordinance. It appears in the record, although not directly in this connection, that he holds under civil service rules and is thus liable to discharge only for cause alleged and proven against him.

On the merits of the controversy, the principal contention for reversal is that the writ compels the doing of an unlawful act. It is not asserted, of course, that the duty to enforce the provisions of an ordinance duly and legally enacted is discretionary with the city officers. On the contrary, it is conceded that it is their imperative duty so to do if the means lie within their power. The obligation is denied in this instance because beyond the officers' powers. The reason is founded on the allegations of the answer, to the effect that the ordinance could not be enforced for the year 1917 without the expenditure of approximately $10,-000; that the city had made its appropriations and tax levies for that year without taking into account this expense, and is therefore without authority to provide for it by additional levies; that the city had reached the debt limit permitted by the constitution and statutes and could not legally incur an additional indebtedness; and that, for want of means, or power to procure means, the enforcement of the ordinance is an impossibility.

But however sound this reasoning might be when applied to a proper state of facts, we think it unsound in the particular instance because unfounded in its principal assumption. This court early laid down, and has since consistently adhered to, the rule that the limitation on indebtedness of municipalities imposed by the constitution was inapplicable to such obligations as were made mandatory by that instrument or were

necessary to maintain the existence of the corporation. It was recognized that the maintenance of city governments was essential to the health, safety, and general welfare of the people of the city, and consequently the limitation of indebtedness imposed could not have been intended to be so far exclusive as to necessitate the suspension of government. *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Duryee v. Friars,* 18 Wash. 55, 50 Pac. 583; *Gladwin v. Ames,* 30 Wash. 608, 71 Pac. 189; *Pilling v. Everett,* 67 Wash. 109, 120 Pac. 873; *Patterson v. Edmonds,* 72 Wash. 88, 129 Pac. 895.

That an efficient fire department is an essential for the protection, and therefore for the existence, of a municipality of the first class does not need argument to demonstrate. Indeed, in *Gladwin v. Ames, supra,* we held that fire insurance on city buildings was such a well recognized method of protection that warrants issued to cover the cost of such insurance, although in excess of the city's legal debt limit, were valid. For a much stronger reason are warrants valid issued under like circumstances to maintain a department for the extinguishment of fires. In *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, and in *Cunningham v. Seattle,* 40 Wash. 59, 82 Pac. 143, 4 L. R. A. (N. S.) 629, we held the fire departments of municipalities to be governmental agencies for the negligent conduct of which by the employees in charge a municipality was not liable in damages; a holding in principle that they were necessary governmental functions. Without pursuing the inquiry further, therefore, we conclude that the maintenance of a fire department in the city of Everett is a necessary governmental function for which the city authorities may incur an indebtedness without violating the prohibition of the constitution limiting the indebtedness of munic-

ipalities to a certain percentage of the value of their taxable property. It follows that the city authorities could support the department by creating an indebtedness, and it was error on their part to conclude that they were without power.

It is contended further, however, that, while a fire department may be a necessity, a double platoon system in such a department may not be a necessity, and whether it is so or not is within the province of the courts to inquire. But the rule is hardly as broad as the contention implies. While it is within the province of the court to inquire whether a fire department is such a necessity as to authorize the incurrence of an indebtedness for its maintenance beyond the legal limit, it will not ordinarily inquire into the character of the department the city maintains. This is a question within the discretion of the city authorities, whose decision will be disturbed only where there is a manifest abuse of discretion, an abuse so gross that it cannot be said that reasonable minds might reasonably differ thereon. The fact that the electors of the city here in question have concluded that a fire department with a double platoon system is a necessity for adequate fire protection does not carry on its face any presumption of unreasonableness, and nothing is alleged or shown that would indicate that it is unreasonable.

Other questions are touched upon in the arguments, but the conclusion reached on the questions discussed is conclusive of the objections urged and further consideration is unnecessary.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, MOUNT, and HOLCOMB, JJ., concur.