[No. 18380. *En Banc.* March 27, 1924.]

CHAS. D. McCARTHY, *Appellant,* v. THE CITY OF KELSO
et al., *Respondents.*[1]

MUNICIPAL CORPORATIONS (486) — INDEBTEDNESS — LIMITATIONS — PUBLIC WATER SUPPLY. The constitutional limitation upon municipal indebtedness does not apply to prevent a city from incurring indebtedness for the construction of a water filtration plant necessary for the preservation of the health and lives of its citizens (MAIN, C. J., PARKER, FULLERTON, and BRIDGES, JJ., dissenting).

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered November 14, 1923, in favor of the defendants, in an action for an injunction, tried to the court. Affirmed.

*Chas. D. McCarthy,* for appellant.

*Fisk & McCarthy,* for respondents.

*M. F. Gose, amicus curiae.*

PEMBERTON, J. — Appellant instituted this action against respondents, asking that respondents be enjoined from issuing certain warrants and creating a certain indebtedness for the construction of a water filtration plant for the city of Kelso. The trial court entered an order denying the injunction, from which this appeal is taken.

The state board of health has directed the discontinuance of the use of the water now available for the city because of its impurities, and it is agreed that there is no other method whereby wholesome water can be supplied.

The constitution, art. 8, § 6, provides as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in

[1] Reported in 223 Pac. 151.

such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: Provided, that no part of the indebtedness allowed in this section shall be incurred for any purpose other than strictly county, city, town, school district, or other municipal purposes: Provided, further, that any city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality.''

It is the contention of appellant that, if the respondents are permitted to issue warrants in the amount of $25,000 for the construction of a municipal water plant, the indebtedness will exceed the limitation under the above provision of the constitution and that an injunction should issue against the city.

It is the contention of the city that it is required to preserve the purity and healthfulness of the water supply (§ 2543, Rem. Comp. Stat.) [P. C. § 9104]; that there is an emergency wherein the very existence of the city is involved and the constitutional limitation upon municipal indebtedness has no application.

We have held that an indebtedness for the impounding of stock, the maintenance of jails and quarantine, is necessary for the preservation of property and the safety of the inhabitants, and therefore not within the constitutional limitation. *Gladwin v. Ames,* 30 Wash.

608, 71 Pac. 189; *Pilling v. Everett,* 67 Wash. 109, 120 Pac. 873; *Patterson v. Edmonds,* 72 Wash. 88, 129 Pac. 895.

We have said:

"That an efficient fire department is an essential for the protection, and therefore for the existence, of a municipality of the first class does not need argument to demonstrate." *State ex rel. Taro v. Everett,* 101 Wash. 561, 172 Pac. 752, L. R. A. 1918E 411.

Having held that the constitutional limitation does not apply to an indebtedness for the maintenance of a jail, a quarantine, a fire department and impounding stock, because such indebtedness is necessary for the preservation of property and the safety of the inhabitants, we see no reason why the constitutional limitation should prevent the city from incurring an indebtedness for the construction of a water filtration plant for the preservation of the health and lives of its citizens. If an indebtedness for the maintenance of the unfortunate in quarantine is valid, certainly an indebtedness to preserve the health of the citizens to avoid the necessity of the quarantine would be valid. The preservation of the inhabitants of a city is as important as the preservation of its property.

The judgment of the trial court is affirmed.

MITCHELL and TOLMAN, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the result. The city is under compulsion to abate a nuisance, and in order to do so it can expend any money manifestly necessary as this appears to be.

MACKINTOSH, J. (concurring)—If the indebtedness attempted to be incurred was for the erection or extension of some city property used in the exercise of the city's power as a proprietor, I would agree with

those judges dissenting here. A city acts in its proprietary capacity in the conduct of a waterworks for the distribution for pay of water to its inhabitants. But the situation here, as I view it, is not such as calls for the application of the rule that the constitutional debt limit cannot be exceeded, even in cases of necessity, for any proprietary activity. Here, it seems to me, we have a case of necessity arising in a matter affecting the city as a branch of sovereignty. In its governmental capacity it is charged with the duty of preventing and abating nuisances, protecting the public health and safety, and where, in order to fulfill those governmental functions, it is necessary to exceed the constitutional limit of indebtedness, such overplus is allowable. It would not be permitted for the purpose of starting or extending waterworks, but here that is not what is intended to be done. The situation here is no different from that which would obtain were the water system privately owned, and to preserve the health of the public it was necessary to render the supply fit for use by removing pestilential conditions; it is no different from that which would obtain were there existing any one of many possible nuisances inimical to public health, which it is unquestioned the city could abate, though the cost of so doing would create a debt beyond the limit fixed by the constitution.

There is an emergency which compels action to allow the city to meet its obligation to protect its residents against contagious diseases, and it is a mere fortuitous circumstance that the cause of the contagion resides in property owned by the city as a proprietor. Would there be any doubt that the city, in its governmental capacity, would be empowered to do what it is here attempting if there was, on a piece of real estate used by it as part of a lighting plant furnishing light for pay, an open pool of stagnant water which the state

health officers found to be a breeding place for mosquitoes that were spreading typhoid germs throughout the community and which those officers ordered to be cleaned up, and the consequent expense to the city would have to be met by exceeding the fixed limit? The situation in Kelso is, in effect, just that, and it should be allowed to preserve the health of its inhabitants by preventing disease, even though the nuisance rises out of the conduct of an instrument owned by it as a proprietor.

I therefore concur in the result arrived at in the first opinion herein.

PARKER, J. (dissenting)—The record in this case, as I read it, shows an attempted incurring of a general indebtedness by the city payable by general taxation, incident to the exercise of one of its proprietary powers as distinguished from its ordinary governmental powers, to wit, the furnishing of water to its inhabitants for drinking purposes, not free, but for compensation from the users of such water. I do not think any indebtedness beyond the city's constitutional debt limit can be lawfully incurred upon the ground of necessity for any such purpose. The decisions of this court cited to support the majority opinion, I think, are clearly distinguishable from this case. They all have to do with purely governmental functions supportable by general taxation alone. I therefore dissent.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur with PARKER, J.