12   541
18    58
18    63
12   541
d21  209

[No. 1891.  Decided September 10, 1895.]

THE STATE OF WASHINGTON on the Relation of W. C. Jones, Attorney General, v. JOHN H. McGRAW et al.

CONSTITUTIONAL LAW — LIMITATION OF STATE INDEBTEDNESS — ISSUANCE OF BONDS.

The act of March 22, 1895, creating a state board of finance and authorizing it to fund the outstanding warrants on the general, military and tide land funds of the state by the issue of bonds, is unconstitutional, being in conflict with art. 8, §1, of the constitution limiting the amount of debt the state may incur, for the purpose of meeting "casual deficits or failures in revenues, or for expenses not provided for," to the sum of four hundred thousand dollars. (HOYT, C. J., dissents.)

*Original Application for Mandamus.*

*James A. Haight,* Assistant Attorney General, for relator.

*Frank C. Owings,* for respondents.

The opinion of the court was delivered by

GORDON, J.—This is an application for a writ of mandate commanding the respondents, as the state board of finance, to issue bonds of the state to an amount aggregating upward of $1,500,000, and to cause the same to be sold, for the purpose of funding the outstanding warrants drawn on the general, military, and tide-land funds, pursuant to the act of the legislature approved March 22, 1895 (Laws, p. 462), entitled, "An act relating to the fiscal affairs of the State of Washington," and declaring an emergency, which act, among other things, provides:

" SEC. 1.  There is hereby created a fund in the treasury of the state known as the 'loan and interest fund.' There is hereby created a board, consisting of the gov-

ernor, state auditor and state treasurer, known as the 'state board of finance.' . . .

SEC. 2. . . . Said board, shall proceed to fund the outstanding warrants on the general, military and tide land funds of the state by the issue of bonds payable solely out of said 'loan and interest fund.' Said bonds shall bear interest at a rate not to exceed four per cent. per annum, and shall run twenty years, save that five per cent. of said bonds shall be redeemed annually, said interest and redemption payments to be made out of said 'loan and interest fund.' Said board shall publish notice of the sale of said bonds in four cities of said state once a week for three consecutive weeks. Said bonds shall be sold after notice as hereinafter provided upon sealed bids to the highest bidder. . . . *Provided*, That said bonds shall not be sold for less than par, and the board shall have the right to reject all bids."

The constitutionality of this enactment is assailed upon many grounds, only one of which, however, need be noticed, as its determination disposes of the case. Section 1, art. 8, of the state constitution is as follows:

"SEC. 1. The state may, to meet casual deficits or failures in revenues, or for expenses not provided for, contract debts, but such debts, direct and contingent, singly or in the aggregate, shall not at any time exceed four hundred thousand dollars ($400,000), and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained, or to repay the debts so contracted, and to no other purpose whatever."

Sections 2 and 3 of the same article of the constitution provide for the incurring of additional indebtedness for the purpose of repelling invasion, suppressing insurrection, and other purposes therein enumerated. But it is conceded that these latter sections in no wise affect the subject matter involved in this proceeding. It will be observed that the authority conferred upon

the respondents by the act in question is to issue and sell said bonds, after notice, to the highest bidder; and, conceding that it is fairly to be inferred from the act that the funds realized from such sale shall be applied to the payment and discharge of the present indebtedness of the state, it is apparent that after said bonds are sold, and until the proceeds thereof are so applied, the indebtedness of the state would be increased upward of $1,500,000, or to an amount beyond the limit of indebtedness as fixed by the constitution. Nor is it, in our opinion, a sufficient answer to say that it must be presumed that the officers entrusted to carry out the provisions of this act will fully discharge their duties, and that the present indebtedness of the state will be extinguished by the proceeds of the bonds, and ultimately the indebtedness of the state be reduced to its present limit. The prohibition in the constitution is that "such debts, . . . singly or in the aggregate, shall not at any time exceed four hundred thousand dollars," and constitutes an "impassable barrier" to the creation of any indebtedness in excess thereof for any period of time, however brief, or for any purpose, however worthy. The constitution of the State of Iowa (art. 11; § 3) provides that:

"No county or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

The terms of the statute of Iowa of 1880 (chapter 132) authorized any independent school district or district township having a bonded indebtedness outstanding to issue negotiable bonds for the purpose of

funding that indebtedness, and the act provided that:

" The treasurer of such district is hereby authorized to sell the bonds provided for in this act at not less than their par value, and apply the proceeds thereof to the payment of the outstanding bonded indebtedness of the district, or he may exchange such bonds for outstanding bonds par for par."

In construing this Iowa statute with reference to the provision of their constitution above quoted, the supreme court of the United States, speaking by Mr. Justice GRAY, in *Doon Township v. Cummins*, 142 U. S. 366 (12 Sup. Ct. 220), say:

" There is a wide difference in the two alternatives which this statute undertakes to authorize.  The second alternative, of exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and an extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution.  But under the first alternative, by which the treasurer is authorized to sell the new bonds, and to apply the proceeds of the sale to the payment of the outstanding ones, it is evident that, if new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and, if new bonds, equal in amount to the old ones, are so issued at one time, is doubled; and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged.  It is true that, if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit.  But it is none the less true that it has been increased in the interval; and that, unless those officers do their duty the in-

crease will be permanent. It would be inconsistent alike with the words and with the object of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make their liability to be. charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers."

We are fully satisfied with the reasoning of the court in that case, and accept it as authority upon the proposition here discussed. To the same effect is the case of *Bannock Co. v. C. Bunting & Co.*, (Idaho) 37 Pac. 277. In that case, after reciting the order of the board of commissioners of the county which directed that the outstanding indebtedness of the said county should be funded by the issue and sale of negotiable bonds for the purpose of paying, redeeming, and funding all of the indebtedness of the county, the supreme court of Idaho say:

" The purpose is stated to be to pay, redeem, and fund the principal and interest of all indebtedness of said county. Suppose, however, that the commissioners, or their successors in office, when the money came into the treasury, should conclude to use it, or a portion of it, for some other purpose. Of course, the presumption of this court is that the commissioners would scrupulously carry out the apparent intention of the board when the bonds were sold, as expressed in the above order; but the court cannot deal in presumptions in favor of proceedings taken without compliance with the constitution. Again, until the money was actually so applied, the debt would be more than doubled."

Our conclusion, therefore, is that the act of March 22, 1895, is in conflict with the provisions of the constitution above quoted, and the application will be denied.

ANDERS, SCOTT and DUNBAR, JJ., concur.

35—12 WASH.

HOYT, C..J. (*dissenting*).—In my opinion the statute under consideration conferred authority upon the the board therein provided for to change the form of the evidences of the debt which was owed by the state, and did not in any manner contemplate the increase of such debt.   If this be so, a compliance therewith would not be the creation of a debt, within the meaning of the constitutional provision upon that subject. The issuing of a warrant in the ordinary course of business is not the creation of a debt.   The obligation for which the warrant is issued is the debt which the state owes, and the issuance of the warrant is the method provided by statute for the payment thereof. When there is no money in the treasury to meet a warrant issued for that purpose, such warrant may constitute the evidence of the indebtedness, but not the indebtedness itself.   Warrants which there is money in the treasury to pay are not in any sense an indebtedness of the state.   For this reason I am unable to agree with the conclusion of the majority that, until the money realized from the sale of the bonds had been actually applied upon the warrants for the payment of which such money had been placed in the treasury, such warrants, as well as the bonds, would be an indebtedness of the state, or even evidence of such indebtedness.   That the legislature has the authority to authorize a change in the form of the indebtedness of the state is beyond question, and, in my opinion, the statute in question did no more.