[No. 2775.   Decided October 26, 1897.]

SCHUYLER DURYEE, *Respondent*, v. Q. E. FRIARS *et al.*, *Appellants.*

PLEADING — FACTS INFERRED FROM THOSE ALLEGED — COUNTY BONDS — NOTICE OF ISSUANCE — DEBT LIMIT — VALIDITY OF WARRANTS FOR NECESSARY EXPENSES.

A complaint is sufficient as against a general demurrer, although it does not contain a direct allegation of a necessary fact, if such matters are specifically alleged as make the existence of the necessary fact clearly appear from the other allegations.

Under the provisions of Laws 1895, p. 465 (Bal. Code, §§ 1890-1895), authorizing the issuance of funding bonds, either in case of sale or of exchange for outstanding warrants, notice thereof calling for bids is necessary as much in the case of an exchange as in the case of a sale of bonds. (GORDON, J., dissents).

Where a county has reached the constitutional limit of its indebtedness, it may thereafter issue its obligations for those

expenses necessary to maintain its existence; but for the purpose of computing the amount of indebtedness it is not authorized to deduct its obligations for such necessary expenses from the sum total of indebtedness, in order to allow a greater margin for such permissible obligations as it is permitted to incur prior to reaching the constitutional limit *(Ranch v. Chapman,* 16 Wash. 568, explained).

Appeal from Superior Court, Snohomish County.—Hon. FRANK T. REID, Judge. Affirmed.

*R. E. Moody,* for appellants.

*Francis H. Brownell,* for respondents.

The opinion of the court was delivered by

SCOTT, C. J.—Plaintiff brought this action to enjoin the county commissioners of Snohomish county from issuing the bonds of such county for the purpose of exchanging the same for its outstanding warrants aggregating some $130,-000. A trial was had and judgment rendered for the plaintiff. Defendants have appealed.

The plaintiff contends that the judgment should be affirmed for two reasons, one being that the act authorizing the issuance of such bonds (Laws 1895, p. 465), provides in section 3 (Bal. Code, § 1892) that before any bonds shall be issued thereunder a notice thereof shall be published calling for bids, and the second is that said outstanding warrants were illegal in consequence of having been issued after the county had reached its limit of indebtedness.

The defendants contend that no notice of the proposed issuance was required, and further, that even if such notice was required, a demurrer interposed by them to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled by the court, should have been sustained, because it did not appear by the complaint that no notice was given, and also because there was no allegation that such outstanding war-

rants had not been issued for those necessary expenses essential to maintaining the county government. Paragraphs 3 and 4 of the complaint are as follows:

" 3. That on or about the 3d day of December, 1896, the said board of county commissioners caused to be spread upon their minutes a resolution entitled: 'A resolution to provide for the issuing of funding bonds for the county of Snohomish for the purpose of taking up certain indebtedness of the county by exchanging the bonds for warrants, providing for the time and manner of issuing said bonds and the time and manner of paying the same.' That said resolution recites that there are outstanding warrants against the county approximating $130,000, which it erroneously and falsely states were issued and are now within the one and one-half per centum constitutional limit, when, in truth and in fact, said warrants outstanding are not within the one and one-half per centum constitutional limitation, but are each and all of them issued in excess thereof. That said resolution after reciting, 'It appearing to the board of county commissioners that all warrants above referred to are now owned and controlled by Morris & Whitehead and that Morris & Whitehead offer to exchange said warrants for funding bonds, par for par and dollar for dollar;' provides for the issuance of bonds payable in gold coin in the city of New York, with interest at six per cent., payable semi-annually, bearing date January 2, 1897, and payable January 2, 1917. Said resolution further provides that said bonds shall be exchanged for all outstanding warrants when the same are presented by Morris & Whitehead or their accredited agent.

" 4. That said bonds, if the same could be validly issued and were offered for sale in the open market, would, as plaintiff is informed and verily believes and therefore alleges the fact to be, sell for more than their face value, and that by providing for the exchange of the said bonds for warrants held by Morris & Whitehead only, the county of Snohomish will not receive for said bonds the sum of money it would receive were the same offered for sale to the highest bidder."

Although the complaint did not contain a direct allegation that no notice of the proposed issuance of said bonds had been published, it necessarily appears from the parts of the resolution quoted and stated in substance that notice was not given, for it only authorized an exchange with Morris & Whitehead, who were alleged to hold the outstanding warrants; and where a complaint alleges such facts specifically as makes the existence of another fact necessary to be shown clearly and necessarily appear therefrom, it is sufficient as against a general demurrer.

The contention of the defendants, that no notice was required in a case like this, is based upon the ground that such notice could serve no purpose, for the reason that the outstanding warrants were all held by one firm and that a bid for the bonds by any other person would be futile, it being contended that in such a case the exchange could not be made without the consent of the parties holding the warrants. The defendants could not sell the bonds and obtain money while the warrants were outstanding, under our holding in *State, ex rel. Jones, v. McGraw*, 12 Wash. 541 (41 Pac. 893), in consequence of the county's debt limitation, and could only exchange the bonds for warrants; but the plaintiff contends, notwithstanding this, that the notice should be given, and that the proceeding could be carried out in case of an acceptance of a bid made by a party not holding the warrants or any of them, by providing for a deposit of the money with an agent, to be used in taking up the warrants, whereupon the commissioners could publish a notice calling the warrants in, in which case they must be presented for payment or they would cease to draw interest; and that, as the warrants were presented for payment, they could be paid from the fund so deposited, and exchanged from time to time as they came in for the bonds, and asserts that this is a common practice.

However this may be, it certainly could be resorted to, and in many cases some such plan would have to be adopted, for it would be unusual to find all the outstanding warrants in the hands of one person or firm, as is alleged to be the case here. The act is specific and requires a notice in all cases, and leaves no room for a different holding, there being a way of rendering it effectual. Consequently the demurrer to the complaint was properly overruled.

The defendants made the entire resolution a part of their answer, and in the evidence offered upon the trial was a list of the warrants intended to be funded, giving the purpose for which each warrant was issued, and the amount of it. Without setting forth the findings of the court in detail, it is sufficient to say that the court found, as a part of such findings, that the floating of such bonds would incur an indebtedness in excess of the one and one-half per centum of the taxable property of the county, that no election had been held for the purpose of authorizing their issuance, and that if the bonds were offered for sale in the open market they would sell for more than their face value. It is apparent from the foregoing that the judgment of the court enjoining the issuance of the bonds must be sustained, on the ground that no notice of the proposed issuance had been given. The proof of this appeared by the resolution itself which the defendants made a part of their answer.

But as this only disposes of the case on the question of the notice, and as another attempt may be made to fund such outstanding warrants by giving the required notice, it may be well to consider to some extent some of the other issues presented, especially in view of the fact that defendants seem to misunderstand what this court decided in *Rauch v. Chapman*, 16 Wash. 568 (48 Pac. 253). One of their contentions is, if we understand their argument, that

under that holding they are entitled to have all of those warrants which were issued for necessary expenses in maintaining the county government deducted from its indebtedness as considered with reference to the debt limit, and, upon that being done, that all of the warrants issued for other purposes were within the debt limit and consequently that the whole were valid. But this contention can not be sustained. What the court decided in that case was that where a county had reached the limit of its indebtedness it could thereafter issue its obligations for those expenses necessary to maintain its existence, the particular questions being the validity of warrants issued for jurors' fees, witness fees in criminal proceedings, sheriffs' expenses in serving criminal process, and expenses incurred at the general state election. And with that holding we are well content, for, that the maintenance of its government is of paramount importance needs no argument, and it can not be done without money or resorting to the county's credit in some way. But in a case like this, where a part of the warrants which were issued for such necessary expenses were issued at a time when the debt limit had not been reached, the same could not be deducted from the amount of indebtedness outstanding in order that an equal amount of warrants issued for other purposes after the debt limitation had been reached could be substituted and thus rendered valid. Before the debt limit was reached the county was issuing its warrants for those necessary expenses and also for those not essential to the maintenance of the county government, but which were yet permissible within the limitation. But there came a time when the aggregate amount of these warrants reached the debt limit. From that time on the county had no authority to issue its obligations for those permissible expenses which were proper before then, and could only issue its obligations for those expenses which were essential

to its existence and the performance of its governmental functions, and the validity of such obligations, when issued by the authority of the commissioners, is a question of fact for the courts to determine. A different rule would obtain as to those expenses incurred in running the court ordered by the court itself, for here the court would have a discretion to determine what was necessary for its existence. It appears from the statement given here that some of these warrants were of that character, such as jurors' fees, etc., but there were many of them issued for those matters which were in nowise essential to the maintenance of the government, and the issuance of all of those was unauthorized after the debt limit had been reached.

One of the contentions of the defendants is that the judgment should be reversed because it appears that some of the warrants were valid—those that were issued before the debt limit had been reached and those that were issued for those necessary expenses after such limit had been reached—and that the injunction should only have gone against the others. But the question is not material here, for the case must be affirmed for the want of the notice, as stated; but there should have been a finding determining the amount of those warrants, had the notice been given, and the commissioners should not have been enjoined from funding the legal outstanding warrants. The presumption, *prima facie*, would be that the warrants were valid, and the complaint should have contained an allegation that those sought to be enjoined were not issued for any of the purposes for which warrants might be issued after the debt limit was reached, as well as that they were in excess of the debt limit.

Affirmed.

ANDERS, DUNBAR and REAVIS, JJ., concur.

GORDON, J., (dissenting).—I dissent.   It seems to me that the ground upon which the majority affirm the judgment, viz., a failure to give notice calling for bids, was not made an issue in the cause.   The sole consideration upon which the injunction was sought, as I read the complaint, was that the outstanding warrants were illegal because of having been issued after the limit of indebtedness had been reached by the county, and this appears to me to have been the sole basis of decision below, as there is no finding upon the question of notice.

It is a familiar rule of pleading that a complaint must proceed upon a distinct and definite theory, and plaintiff must recover upon that theory or he can not recover at all. But, irrespective of this, in my judgment no notice is required where the purpose is to exchange bonds for outstanding warrants.   The statute authorizes two alternatives:

"They [the bonds] may be exchanged at not less than their par value for such warrants or other outstanding indebtedness, or may be sold at not less than their par value, and the proceeds used exclusively for the purpose of retiring and canceling such warrants and interest thereon or other indebtedness."   Laws 1895, p. 466, § 2 (Bal. Code, § 1891).

The notice required by section 3 of the act should be held to be necessary only where the alternative of selling the bonds is resorted to.   While the language in regard to notice is broad enough to include both alternatives, it seems to me that an examination of the entire act makes it reasonably clear that notice is only essential when the bonds are to be sold.   The section (§ 3, p. 467) providing for notice makes it "the duty of the corporate authorities to meet with the treasurer of the county, city or town, proposing to issue such bonds, at his office and with him open

said bids, and *shall sell said bonds* to the person or persons," etc. There is a vast difference between a *sale* and an *exchange*; an exchange contemplates the giving or taking of one thing in return for another without the intervention of money. To say that notice is required to be given where merely an exchange is to be effected virtually renders nugatory the provision of the act authorizing an exchange. Clearly the only person who could exchange a warrant for a bond would be the holder of such warrant. It is also probable that a sale of the bonds could not be consummated for the reasons pointed out by this court in *State, ex rel. Jones, v. McGraw*, 12 Wash. 543 (41 Pac. 893), where it was held that the aggregate amount of the warrants and bonds must be within the debt limit. Recognizing this difficulty, it is said in the majority opinion:

" . . . but the plaintiff contends, notwithstanding this, that the notice should be given, and that the proceeding could be carried out in case of an acceptance of a bid made by a party not holding the warrants or any of them, by providing for a deposit of the money with an agent, to be used in taking up the warrants, whereupon the commissioners could publish a notice calling the warrants in, in which case they must be presented for payment or they would cease to draw interest, and that, as the warrants were presented for payment they could be paid from the fund so deposited, and exchanged from time to time as they came in for the bonds, and asserts that this is a common practice. However this may be, it certainly could be resorted to, and in many cases some such plan would have to be adopted."

It seems to me that the plan here approved is a mere scheme of evasion unbecoming the dignity of a political subdivision of the state. Who is the "agent" with whom the money is to be deposited? Counties have only such agents as the law has provided and their duties are de-

fined by law. Manifestly the party with whom the funds are to be deposited can not legally be the agent of the county, and if he is the agent of the purchaser what right has such person to pay municipal warrants? And how can the commissioners call in outstanding warrants until there is money in the public treasury lawfully available for their payment? The law makes it the duty of the treasurer to call in warrants when he has available funds with which to pay them. In my judgment the law has provided a plain method of procedure, and it is unnecessary to resort to any shift or artifice in order to give effect to its provisions.

On the other branch of the case I fully concur in what is said in the opinion, but for the reasons above noticed I think the demurrer to the complaint should have been sustained, and upon the findings of the court the decree should be reversed or at least substantially modified.