[No. 23727. Department One. April 12, 1932.]

THE STATE OF WASHINGTON, *on the Relation of Thurston County, Plaintiff,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

*Harold P. Troy* and *Smith Troy,* for relator.

*The Attorney General* and *Harry Ellsworth Foster, Assistant,* for respondents.

*A. C. Van Soelen, amicus curiae.*

BEELER, J.—The relator, by an original application in this court, seeks the issuance of a peremptory writ of mandate to compel the department of labor and industries and the state treasurer to accept two county warrants issued by Thurston county marked "not paid for want of funds," in payment of industrial insurance and medical aid premiums. The matter comes before the court upon respondents' demurrer to the relator's petition.

It is alleged in the petition that Thurston county employs men in the construction and maintenance of county roads and bridges, an occupation classified

[1] Reported in 9 P. (2d) 1085.

under the workmen's compensation act as extrahazardous, and that the relator became liable for the payment of industrial insurance and medical aid premiums to the department of labor and industries; that, in January, 1932, the county auditor of Thurston county drew two warrants payable to the department of labor and industries in the sum of $8.17 and $15.01, respectively, in payment of industrial insurance and medical aid premiums, and tendered them to the department of labor and industries; that both warrants bear interest from the date of presentation until paid at the rate of six per cent per annum; that the respondents presented both of such warrants to the Thurston county treasurer for payment February 19, 1932, which warrants were marked by the county treasurer "not paid for want of funds," and by reason thereof the department of labor and industries refused to accept them and returned them to the relator. It is further alleged:

"That, under the terms and provisions of sec. 4086, 4109, 4114, 4115, Rem. Comp. Statutes, of the State of Wash. the relator can pay its obligations in no other way than by warrant. That, under the terms and provisions of said statutes, the county is prohibited from preferring one warrant over another and is obliged to pay all outstanding warrants serially in the order of their issue."

The respondents in their brief concede that the relator, being a municipal corporation, can disburse its funds in payment of its obligations in no other manner than by warrant. It is said:

"The argument in this case may be simplified somewhat by a fair statement on our part that, under the statutes referred to in the relator's petition herein, the payment in question may be made in no other manner than by warrant. In other words, Thurston county in this instance has no other means by which

to make the payments. It is further precluded from preferring one warrant from another; they must be paid serially according to issue."

The respondents contend, however, that the payment of industrial insurance and medical aid premiums must be made in legal tender, and that a no-fund warrant is not legal tender. But the question here is not whether a no-fund warrant is legal tender, but rather whether a municipal corporation can disburse public funds in any manner except by warrant. The term "municipal corporation," wherever used in this opinion, is intended to refer only to a county, and not to a city or town.

It is elementary that the duties and powers of a municipal corporation relating to the payment or disbursement of public funds are wholly regulated by statute. Under our statute, a municipal corporation is required to disburse public funds and pay its obligations by warrant. It can pay in no other manner. Nor can it prefer one warrant over another, but is required to pay them serially and in the order of their issuance. If a county treasurer, for want of funds, is unable to cash or pay a warrant upon presentation, he is required under the statute to stamp such warrant "not paid for want of funds." Thereupon such warrant bears interest at the rate of six per cent per annum until paid.

Rem. Comp. Stat., § 4086, was enacted in 1881, and §§ 4109, 4114 and 4115 were enacted in 1893, and provide, in part, the regulations or machinery by which county officials are required to disburse public funds. These provisions have been in full force and effect since the date of their enactment.

The workmen's compensation act was not passed until 1911. The legislature at various times thereafter

amended the act. But neither in the original act nor in any of the subsequent amendments has the legislature undertaken to require municipal corporations employing men engaged in extrahazardous work to pay industrial insurance and medical aid premiums in any manner other than by warrant. It must be presumed that the legislature, at the time of the enactment of the workmen's compensation act, fully understood the limitations placed upon the officials of a municipal corporation charged with the duty of disbursing public funds. It must be further presumed that the legislature, at and subsequent to the enactment of the workmen's compensation act, fully recognized that municipal corporations are frequently unable to meet and pay their obligations promptly, and, if without available funds, could discharge their obligations by the issuance of warrants marked "not paid for want of funds," under the then existing statutory provisions.

Although the legislature has convened biennially for over a period of twenty years since the enactment of the workmen's compensation act, it has permitted the statutes here under consideration to remain unchanged. It seems clear, therefore, that the legislature has at all times recognized that a municipal corporation could pay its industrial insurance and medical aid premiums only by warrant, and that, if the treasurer of such municipal corporation was temporarily without available funds, the warrant would be marked "not paid for want of funds." This view is accentuated when we take into account the fact that the legislature has not undertaken within the last twenty years to amend these statutes. If relief is desired from the situation confronting the department of labor and industries, application should be made to the legislative branch of the government.

While the statutes heretofore referred to are con-

trolling, nevertheless the case of *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, sheds some light on the problem now before us. In that case, an action was brought to enjoin the collection of a tax assessed against real property. The plaintiff claimed that the property was grossly over-valued for taxation purposes, resulting in a greatly excessive tax. A demurrer was sustained to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action under the provisions of chap. 62, Laws of 1931, p. 201, which, in effect, provides that a person feeling aggrieved as to the valuation placed upon property for taxation purposes may pay the tax under a written protest setting forth the various grounds upon which the tax is claimed to be unlawful or excessive. The statute further provides that, in the event of a recovery, the payment of the judgment obtained shall be by the issuance of warrants against a fund created by the act known as the "county tax refund fund."

One of the contentions there made was that the successful litigant would be required to accept a warrant drawn upon a fund which might not have money available to meet the warrant. Disposing of that contention, we said:

"But it is argued that, because the successful litigant must accept a warrant drawn on a fund which may not be in a position to respond for a period of months, the warrant is no adequate replacement of the money paid on the excessive tax, and that, as a result, the remedy is neither speedy nor adequate. It is also urged that a taxpayer who has so recovered a judgment and received a warrant will be taxed by the levy to meet the requirements of the fund, and by the payment of subsequently increased taxes he will be obliged to pay in part his own warrant.

"The answer seems to be that all governments pay in warrants; and the mere fact that a warrant, because of the depletion of the fund upon which it is drawn, is

not at once reducible to money, makes it none the less the only means of paying public officers, employees and those who supply the daily needs of the state and its local subdivisions. Such a warrant is negotiable, in the commercial sense, at least, and those who must can usually obtain its present value in cash, or, if they think proper to hold it, receive interest upon it until it is redeemed. The state appears to have done all it can to be fair to warrant holders.''

The peremptory writ of mandate will issue directing the respondents to accept the warrants and credit the relator with the payment of the industrial insurance and medical aid premiums for which such warrants were drawn.

It is so ordered.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.