[No. 25410. *En Banc.* January 4, 1935.]

LEO WEISFIELD, *Appellant*, v. THE CITY OF SEATTLE,
*et al., Respondents.*[1]

[1]Reported in 40 P. (2d) 149.

289

*M. M. Pixley,* for appellant.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents City of Seattle *et al.*

*Colvin & Rhodes,* for respondents Maxmillian *et al.*

MITCHELL, J.—Seattle, a city of the first class, for some years had, and still has, an initiative ordinance fixing the salary rates of civil service employees or officers in class "C" of the police department and class "D" of the fire department. A large number of such officers were induced to give purported waivers of portions of their monthly salaries from July 1, 1932, to July 1, 1934. One of such officers was R. B. Wells, of the fire department, the validity of whose waiver was litigated, wherein it was determined in *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, that the purported waiver was void.

Thereafter, a number of such officers threatened to sue, and a great many of them have sued, the city to recover portions of monthly salaries appearing to have been waived by them. In this situation, the city council passed an ordinance, No. 64981, approved by the mayor on September 20, 1934, entitled:

"AN ORDINANCE relating to and authorizing the issuance and sale of general negotiable interest-bearing serial coupon bonds in the sum of Eight Hundred

Fifty Thousand Dollars ($850,000.00) for corporate purposes, to-wit: The payment of certain back salary due members of the Police and Fire Departments; providing for a loan; providing for the levy and collection of taxes for the payment of principal and interest of said bonds, and creating and establishing a bond interest and redemption fund.''

Certain portions of the ordinance are especially pertinent to the points in the present case, portions of which, including what may be termed legislative findings of the city council, we have italicized, as follows:

''WHEREAS, Initiative Ordinance No. 47660 (Ordinance No. 48053½) of the City of Seattle, approved by the voters at the November 1924 election increased the then existing salary rates of members in Classes 'C' and 'D' in the police and fire departments, respectively, Twenty-five Dollars ($25) per month, effective January 1, 1925; and,

''WHEREAS, said salary rates have not since been changed in the manner provided by law; and,

''WHEREAS, the Supreme Court of the State has ruled, in the case of *State ex rel. Knez v. City of Seattle, et al.*, 76 Wash. Dec. 201, case number 24732 (affirmed *en banc* on rehearing June 20, 1934) that the salary rates as fixed by said initiative ordinance are not subject to reduction by the City Council or waiver by the members of said departments; and,

''WHEREAS, under the rule laid down in said decision, an aggregate of approximately $400,000 is due certain members of the Police Department, and an aggregate of approximately $450,000 is due certain members of the Fire Department for back pay in connection with services rendered from July 1, 1932 to July 1, 1934, being the difference between the salaries paid said members and the salary lawfully payable; and,

''WHEREAS, the City is threatened with law suits by hundreds of said members, unless it voluntarily provides for payment thereof; and,

''WHEREAS, *the City has no available funds lawfully applicable to the payment of said back salaries;* and,

''WHEREAS, *any attempt on the part of the City to pay said sums other than by the issue of bonds will*

*disrupt the current and succeeding budgets and demor-
alize the City's finances and endanger the public safety
because the City, if compelled to pay said back salaries
in full out of current tax collections, will be compelled
to drastically reduce the force in both the Police and
Fire Departments and all other departments of the
City government;* Now, Therefore,

"Be It Ordained by the City of Seattle as Fol-
lows:

"Section 1. *That public necessity requires that gen-
eral negotiable interest bearing serial coupon bonds of
The City of Seattle be, and they are hereby, directed to
be issued for strictly corporate purposes as above set
forth* in an aggregate sum not exceeding Eight Hun-
dred Fifty Thousand Dollars ($850,000), *bearing in-
terest at not to exceed six per cent (6%) per annum,*
payable semiannually, *and dated and sold at such times
and in such series or installments as the City Council
shall by resolution direct,* and that a loan in said
amount be, and the same is hereby, authorized."

The ordinance then provides further description of
the bonds to be issued, as to serial numbers, and an-
nual maturities from the second to the tenth year,
reserving the right to redeem after five years any or
all unmatured bonds at any interest payment date
upon thirty days' notice. The ordinance sets out in
full the form in which the bonds and coupons shall
be issued. Section 3 of the ordinance provides the
manner in which the bonds shall be signed under the
seal of the city and the manner in which the attached
coupons shall be executed and signed. Section 4 of
the ordinance creates and establishes a special fund,
as follows:

"Section 4. That there be, and is hereby, created
and established a fund to be known as 'Police and
Firemen's Back Salary Fund,' into which shall be paid
all moneys derived from the sale of said bonds, and
out of which shall be paid the indebtedness herein re-
ferred to in such manner as the City Council shall
provide by ordinance."

Other sections are as follows:

"Section 5. *The corporate authorities of the City of Seattle hereby acknowledge an indebtedness to certain members (Classes 'C' and 'D,' as classified by the Civil Service Commission of the City of Seattle) of the Police and Fire Departments for services rendered between July 1, 1932, and July 1, 1934, which were and are essential for protection of the City government,* as such services are shown to have been performed by each of said members of said departments, as certified under oath by the Chiefs of said Departments, respectively, and checked and found to be correct by the City Comptroller of the City of Seattle with respect to the amount due each of such members, being the difference between the salaries paid such members between July 1, 1932 and July 1, 1934, and the lawful rate of salary applicable to such service as provided by Initiative Ordinance No. 47660 (Ordinance No. 48053½), approved by the voters at the November, 1924, election and held to be due each of said members under the principle of the ruling of the Supreme Court of the State of Washington, in the case of *State ex rel. Knez v. City of Seattle, et al.,* reported in 76 Wash. Dec. 201, case number 24732 (affirmed *en banc* on rehearing June 20, 1934).

"Section 6. *That no part of the proceeds from the sale of the bonds hereby authorized shall be used for any purpose whatsoever other than the foregoing.*

"Section 7. That there shall be levied each year by the City Council of The City of Seattle, in its annual tax levy, a tax upon all of the property in said City subject to taxation, sufficient to pay the principal and interest upon said bonds as the same mature and accrue, and the amount of such tax so collected shall be by the City Treasurer paid into a special fund, which is hereby created and established, to be known as the 'Police and Firemen's Back Salary Bond Fund,' and no part of such tax so collected shall be devoted to any other purpose than the payment of such principal and interest, and the faith, credit and resources of The City of Seattle are hereby pledged to and for the annual levy and collection of such tax and the regular

payment of such principal and interest. Such tax shall become due and collectible as other taxes in said City.''

The ordinance was not submitted to a popular vote.

Plaintiff, a resident taxpayer within the city, brought this action, on his own behalf as a taxpayer and on behalf of all others similarly situated, against the city, its mayor and comptroller, for the purpose of having the ordinance declared void, and to enjoin the issuance and sale of the bonds.

Omitting certain formal matters, the complaint alleges in substance that, at the date of the ordinance, the city was indebted more than one and one-half per centum of the value of its taxable property, as determined by the last assessment for city purposes, after giving credit for uncollected taxes, and that its indebtedness exceeds five per centum of the value of the city's taxable property, as defined and limited by Article VIII, § 6, of the state constitution.

Allegations are made with respect to waivers by policemen and firemen of portions of their monthly salaries from July 1, 1932, to July 1, 1934, and to the decision in the *Knez* case, by reason of which, 1,214 such employees of the police and fire departments now claim the right to recover back pay in the approximate sum of $850,000; that certain of the claimants have sued the city; that the city has already passed ordinance No. 64981, and that no warrants have been issued to any of the officers for back pay.

Paragraph 9 of the complaint is as follows:

''That said ordinance number 64981 is invalid and beyond the powers of the City of Seattle for the following reasons:

''(a) Said ordinance creates an indebtedness in excess of the limitations prescribed by Article 8, Section 6, of the Constitution of the State of Washington.

''(b) Said ordinance constitutes an attempt to fund

an anticipated debt or liability, of a vague and uncertain amount, in evidence of which no warrants or bonds have been issued, nor are the persons to whom payment is to be made identified or the amount due each in any manner fixed or limited.

"(c) Said ordinance has never been submitted to the qualified electors of the City of Seattle as required by law.

"(d) That the liability admitted in said ordinance, if such exists, is a liability allowed to be created by the City of Seattle, contrary to the provisions of Rem. Rev. Stat. 9538 and 9000-22.

"(e) That the City Council of the City of Seattle had knowledge from on and after June 20, 1934 of the decision in said case of *Knez v. City of Seattle,* and in violation of Rem. Rev. Stat. 9000 and particularly in violation of Section 14, subdivision C thereof, failed, and refused to include in the City Budget for the year 1935 any tax levy whatsoever for payment of the obligations attempted to be paid by said bond issue. That the same could and should have been included and the failure to include the same will, if said bonds are issued, unnecessarily burden all taxable property, not only with the amount of such of said claims as may be valid, but also with interest and expense incident to the issue and sale of said bonds.

"(f) That by said ordinance an attempt is being made to pay not only back wages for which a claim is being made, but also to pay an additional sum of over \$538,171 for which no claims have been made for payment and if otherwise valid it can only be valid to the extent of the claims of those employes who are demanding payment.

"(g) That if said bonds are issued a liability will exist against the City of Seattle, not only to the extent of said bonds but also to the extent of all claims for which the City of Seattle may be held liable for said back wages.

"(h) That the method provided in said ordinance for fixing the amount that may be due each employe is an unwarranted and illegal delegation of the powers of the City Council and grants to department heads and the City Comptroller judicial powers.

"(i)    That no ordinance has been enacted by the City Council fixing the amount of back pay due each employee nor has the amount thereof been determined in the manner provided in said ordinance or in any other manner.

"(j)    Said ordinance contains not only the subject of said bond issue but also the subject of providing a means for determining the extent of the liability of the City for payments to be made therefrom, and which subjects are not clearly set forth in the title, all in violation of section 10 of article 4 of the charter of the City of Seattle which reads as follows: 'Every legislative act shall be by ordinance. Every ordinance shall be clearly entitled and shall contain but one subject which shall be clearly expressed in its title.'"

The city answered the complaint by appropriate general denials. Some 107 policemen and 418 firemen, by their several suits against the city, demanded relief for back pay to which they were entitled, and later, upon trial, found to be, in an aggregate sum, in excess of three hundred thousand dollars. These policemen and firemen, by leave of court, intervened in the present taxpayer's suit, setting up their right to receive pay and their interest in the subject matter of the suit.

Upon the trial, the court entered findings of fact and conclusions of law, in substance, or as follows: That Seattle is a city of the first class, and that the other defendants are mayor and comptroller, respectively; that interveners are or were policemen and firemen embraced within ordinance No. 64981, and plaintiffs in pending suits against the city for back pay in a total amount in excess of three hundred thousand dollars and interested in the present action. That, between July 1, 1932, and July 1, 1934, the city became indebted to certain policemen in the approximate amount of four hundred thousand dollars, and to cer-

tain firemen in the approximate amount of four hundred and fifty thousand dollars, for back pay on their salaries.

"(5) That the city of Seattle was, and is, threatened with law suits by hundreds of said policemen and firemen unless it voluntarily provided for payment of said indebtedness, and that the city of Seattle had, and has, no available funds lawfully applicable to the payment of said back salaries and indebtedness.

"(6) *That all of said members of the Police and Fire Departments, employed during the period hereinabove referred to, were necessary to properly man and operate said Police and Fire Departments, and were, and are, essential for the protection and operation of the governmental functions of the city of Seattle.*

"(7) *That any attempt on the part of the defendant city of Seattle to pay said indebtedness other than by the issue of bonds will disrupt the current and succeeding budgets and demoralize the city's finances and endanger the public safety, because if the defendant city is compelled to pay said indebtedness in full out of current tax collections it would be compelled, under the limitations on its taxing power, to drastically reduce the force in both the Police and Fire Departments and all other departments of the city government. That the incurrence of said indebtedness was necessary in the maintenance and life of the city government.*

"(8) That the legislative authority of the city of Seattle without a vote of the people thereon did, on the 20th day of September, 1934, duly enact ordinance No. 64981, entitled:

"'An ORDINANCE relating to and authorizing the issuance and sale of general negotiable interest bearing serial coupon bonds in the sum of eight hundred fifty thousand dollars ($850,000) for corporate purposes, to-wit: The payment of certain back salary due members of the Police and Fire Departments; providing for a loan; providing for the levy and collection of taxes for the payment of principal and interest on

said bonds; and creating and establishing a bond interest and redemption fund.'

[By reference the ordinance in full is included.]

"(9) That no warrants have been issued to any of said members of the Police and Fire Departments for said back pay, nor has the City Council enacted any ordinance authorizing the issuance of warrants therefor other than said ordinance No. 64981, hereinabove referred to. That said ordinance No. 64981 is a valid and subsisting ordinance of the city of Seattle, and that the bond issue therein provided for is a valid indebtedness of the city of Seattle and not within any limitation on indebtedness prescribed by the constitution and statutes of the state of Washington or the charter of the city of Seattle."

Conclusions of law were made by the court as follows:

"(1) That ordinance No. 64981, hereinabove referred to, is a legal, valid and subsisting ordinance of the city of Seattle, and that the bonds therein provided for constitute a legal, valid and binding obligation of the city of Seattle.

"(2) That said ordinance No. 64981 and said bonds provided for therein *are not invalid for any of the reasons set out in paragraph IX of plaintiff's complaint herein or for any other reason.*

"(3) That the defendants and interveners are entitled to judgment of dismissal of the above entitled cause and for their costs and disbursements herein to be taxed."

Upon the foregoing findings and conclusions, judgment was entered declaring ordinance No. 64981 to be a valid ordinance of the city, and the bonds therein provided for valid, legal obligations of the city; and that the cause of action be and the same is dismissed with prejudice. The plaintiff has appealed from the judgment.

The assignments of error are:

"(1) The court erred in making finding of fact No. 5 for the reason that the same is contrary to and not supported by the evidence.

"(2) The court erred in making finding of fact No. 7 for the reason that the same is contrary to and not supported by the evidence.

"(3) The court erred in making finding of fact No. 9 by holding said ordinance to be a valid and subsisting ordinance of the city of Seattle and by further holding that the same is not within the limitations on indebtedness prescribed by the constitution and statutes of the state of Washington, for the reason that the same is contrary to the facts and law.

"(4) The court erred in making conclusion of law No. 1 for the reason that the same is contrary to the facts and the law applicable thereto.

"(5) The court erred in making conclusion of law No. 2 for the reason that the same is contrary to the facts and the law applicable thereto.

"(6) The court erred in making conclusion of law No. 3 for the reason that the same is contrary to the law.

"(7) The court erred in rendering judgment denying plaintiff the relief sought and dismissing the action for the reason that the same is contrary to the facts and law of the case."

The arguments under the first assignment are twofold: (1) "That finding No. 5 is not supported by the evidence." The record shows, however, that suits were and are pending against the city in which, at the time of the trial in the present action, findings had been entered against the city of indebtedness in excess of three hundred thousand dollars, and the ordinance contains a finding coupled with an admission by the city of an indebtedness to the policemen and firemen in the total amount of approximately $850,000.

(2) "That the city does have funds which could be used for general purposes consisting of $85,000 Schmitz Park bridge bonds, $700,000 sewer bonds and

$1,128,000 arterial highway bonds, all general fund bonds.''

But in connection with this contention, appellant admits that *because the city has outstanding general fund warrants in excess of the total amount of the bond issues specified,* those funds cannot be used to pay back salaries of the policemen and firemen. Nor .is there any evidence in the record that the funds referred to are available to meet the demands of these officers.

Assignment No. 2 questions finding of fact No. 7, to the effect that any attempt to pay the indebtedness ''other than by the issuance of bonds will disrupt current and succeeding budgets, demoralize the city's finances and endanger public safety.'' That is what the city, acting in its legislative capacity, declared in the ordinance to be the fact, and gave as a reason therefor that any other plan of payment would ''drastically reduce the force in both the police and fire departments *and all other departments of the city government.''* In addition to this finding by the city, the evidence shows that, during the time covered by the waivers, 1932 to 1934, an appreciable reduction in the force of the fire department was tried with the result of a threat of twenty-five per cent increase in fire insurance rates, and further: ''Q. And it also naturally decreased the fire protection of the city? A. Sure, it did.'' The finding objected to under this assignment must be taken as established. There was no evidence to the contrary. The further contention under this assignment, that the indebtedness involved should be paid by warrants rather than a bond issue, will be more fully discussed in the next assignments.

The remaining assignments, 3, 4, 5, 6 and 7, are presented in a group by the appellant, by dividing them into sub-heads, as follows:

■ (One) That the city of Seattle, having exceeded its constitutional debt limit, both as to the one and one-half per cent and the five per cent limitations, has no power or authority to incur any debt whatever. Washington state constitution, Article VIII, § 6. This provision of the constitution applies to counties, cities, towns, school districts or other municipal corporations.

Parenthetically, and for the purposes of this case, it may be taken for granted that the city has become indebted beyond the limitations referred to, just as the attorneys for the respondents admitted at the trial, and for the reasons given by them that the indebtedness involved was incurred for corporate purposes and to maintain the existence of the city, and as essential to the health, safety and general welfare of the people of the city, and therefore not covered by the debt limit clauses in the constitution. Such has been the uniform holding in this state since the decision in *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407. After the decision in that case, a number of others of the same kind, down to and including *State ex rel. Taro v. Everett,* 101 Wash. 561, 172 Pac. 752, were brought here, with the same result. In the *Everett* case, it was sought to compel the city to put in force an ordinance of the city designed to strengthen and improve the service of the fire department. One of the defenses was that the city had reached the constitutional debt limit, and that, for want of means or power to proceed, the enforcement of the ordinance was impossible. Discussing that question, with prior cases upon that subject at hand, it was said:

"This court early laid down, and has since consistently adhered to, the rule that the limitation on indebtedness of municipalities imposed by the constitution was inapplicable to such obligations as were made mandatory by that instrument *or* were necessary to maintain the existence of the corporation. It was rec-

ognized that the maintenance of city governments was essential to the health, safety, and general welfare of the people of the city, and consequently the limitation of indebtedness imposed could not have been intended to be so far exclusive as to necessitate the suspension of government. *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Duryee v. Friars,* 18 Wash. 55, 50 Pac. 583; *Gladwin v. Ames,* 30 Wash. 608, 71 Pac. 189; *Pilling v. Everett,* 67 Wash. 109, 120 Pac. 873; *Patterson v. Edmonds,* 72 Wash. 88, 129 Pac. 895.

"That an efficient fire department is an essential for the protection, and therefore for the existence, of a municipality of the first class does not need argument to demonstrate."

Then, upon referring to other cases, it was said:

"Without pursuing the inquiry further, therefore, we conclude that the maintenance of a fire department in the city of Everett is a necessary governmental function for which the city authorities may incur an indebtedness without violating the prohibition of the constitution limiting the indebtedness of municipalities to a certain percentage of the value of their taxable property. It follows that the city authorities could support the department by creating an indebtedness, and it was error on their part to conclude that they were without power."

Later cases to the same effect are: *McCarthy v. Kelso,* 129 Wash. 121, 223 Pac. 151 (involving a new water supply); *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90 (involving county expenses); *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26 (county emergency relief). Police service, of course, falls within the same class as a necessary function of municipal government.

Among the cases cited by appellant, *State ex rel. Atkinson v. Ross,* 43 Wash. 290, 86 Pac. 575; *State ex rel. Winston v. Rogers,* 21 Wash. 206, 57 Pac. 801; *State ex rel. Jones v. McGraw,* 12 Wash. 541, 41 Pac.

893, do not discuss the question with which we are concerned in the present case. *Duryee v. Friars,* 18 Wash. 55, 50 Pac. 583, refers, with approval, to the holding in *Rauch v. Chapman, supra,* but says that the indebtedness involved did not fall in the class covered by the *Rauch* case. In *Ritchie v. State,* 42 Wash. 653, 85 Pac. 417, and *Wolfe v. School District No. 2,* 58 Wash. 212, 108 Pac. 442, 137 Am. St. 1057, 27 L. R. A. (N. S.) 891, it was held that the *Rauch v. Chapman* case was not applicable.

■ (Two) "No emergency exists warranting a violation of the constitutional limitation as heretofore pointed out. The city can, by the simple expedient of issuing warrants, terminate this matter until such time tax money is available with which to pay the warrants. The mere fact that a city allows its debts and expenses to be increased beyond that which can be met by taxation does not create an emergency or great necessity warranting it to exceed its debt limit."

As already seen, indebtedness of the kind involved is not within the limitations of the constitutional provisions, nor is the validity or payment of it dependent upon an emergency or lack of it, so far as the constitutional provision is concerned. Nor are we persuaded against the judgment by the argument that the city, by issuing warrants, can terminate this matter until such time as the tax money is available to pay the warrants; the plan of payment being within the discretion of the city.

The budget system for first class cities of over 300,-000 persons, Rem. Rev. Stat., § 9000-14 [P. C. § 687e-2], provides that:

"On or before the tenth day of July of each year the heads of all departments shall submit to the finance committee of the city council an estimate of the probable expense of their several departments for the ensuing year."

It is provided in the next section that, in addition to these estimated amounts required to maintain the several departments,

" . . . the council shall also prepare an estimate of the revenues, other than taxes, that are likely to accrue to the city, *and the various amounts required to meet interest and redemption payments upon the debt of the city for the ensuing year,* etc." (Italics ours.) Rem. Rev. Stat., § 9000-15 [P. C. § 687e-3].

That is the only provision in the budget law relating to present indebtedness, of whatever kind, of the city, and *refers only to interest and redemption payments for the ensuing year, and not to the principal.*

The act speaks of emergencies, and provides for taking care of them. The terms of the statute in that respect are lengthy, and need not be set out herein. It is plain, however, upon reading the statute, together with the construction placed on it in the case of *Kruesel v. Collin,* 170 Wash. 233, 16 P. (2d) 442, that the emergencies in mind are such as occur *during* the year for which the budget is adopted. Significantly, in the case just referred to, an ordinance that had not been submitted to a popular vote was sustained, which authorized a bond issue to take up outstanding warrant indebtedness for emergency relief that had been given in excess of the estimated amount in the budget current at the time such relief was given. The budget act gives no power to issue bonds for any purpose, so that the power to issue the bonds in that case was, of course, referable to the general grant of powers enumerated in Rem. Rev. Stat., § 8966 [P. C. § 678], as follows:

"Any such city shall have power . . .
"(4) To borrow money for corporate purposes on the credit of the corporation, and to issue negotiable bonds therefor . . ."

This is the same statute upon which, under essentially similar circumstances, with respect to the *power* of the city to issue negotiable bonds to provide funds for the necessary maintenance of city government, the case of *Denman v. Tacoma,* 170 Wash. 406, 16 P. (2d) 596, was decided. Nor can it make any difference, in ascertaining the corporate purpose with respect to outstanding obligations of the city, whether the obligations are warrants or other forms of indebtedness. All that is necessary is that the indebtedness relate to corporate purposes, as in the present case, as the words corporate purposes are commonly understood and defined in the case of *Denman v. Tacoma, supra.*

The appellant insists upon the "simple expedient of issuing the warrants" to be called when tax money is available for that purpose. Whether warrants or bonds shall be issued is within the discretion of the city, which discretion will not be disturbed in the absence of abuse of it, which does not exist here. There is no denial of the debts due the policemen and firemen, nor is there, nor can there be, any serious contention other than that the bonds are to be sold in installments to provide funds as needed to take up the debts as they are proven and established.

Appellant impliedly admits that the money derived from the sale of bonds will be used for corporate purposes for which taxes may be levied to pay warrants. Then, why question the power of the city, under Rem. Rev. Stat., § 8966 [P. C. § 678], subd. 4, to issue bonds? We held in *Denman v. Tacoma, supra:*

"... they must be corporate purposes for meeting which the city is empowered to 'borrow money . . . upon the credit of the corporation and *issue negotiable bonds* therefor.' We fail to see how the *method of defraying such charges can change their character.*" (Italics ours.)

The *power* to issue bonds is the same whether for

indebtedness already incurred or to be incurred for corporate purposes.

This is a taxpayer's suit. Whatever method is adopted by the city to meet the indebtedness to which the ordinance and bonds relate, in no way changes the amount to be paid. Should warrants be issued, upon their being endorsed "Not paid for want of funds," they would bear interest at six per cent per annum until called. Rem. Rev. Stat., § 4114 [P. C. § 1825]. The bonds to be issued here are to be serial in form and mature annually, commencing with the second and ending with the tenth year, and bear interest at *not to exceed six per cent per annum.* Certainly, the discretion of the city in choosing this plan of meeting this outstanding indebtedness does not indicate arbitrariness toward the taxpayer, and at the same time, according to the findings of both the city and the superior court, it will prevent a disruption of the current and succeeding budgets upon which the public safety of the city depends.

(Three) "Warrants have not been issued for the claims in question, and the electors of the city have not been given the opportunity to vote on the proposition."

A popular vote was not necessary to the validity of the ordinance. The bonds are not intended to raise money for some future activity or enterprise, but to meet outstanding, completed obligations. For that purpose, the bond issue is within the discretion of the city council.

(Four) "The ordinance violates the budget law."

This point has already been discussed herein, and requires no further consideration, the contention being without merit.

(Five) "The ordinance amounts to class legislation."

As we understand, the argument is that *all* the creditors of the city constitute one class, and that, by ordinance, the city is preferring only a portion of that class. But, as already noticed, this is a taxpayer's suit. Appellant is not a creditor. Moreover, there is nothing arbitrary or unreasonable about the classification simply because it may not include all creditors of every class. It is not reasonable to infer that all of so large a class as all the creditors of the city are similarly situated; indeed, we have just seen that obligations of this kind, to maintain the existence of the corporation, being essential to the health, safety and general welfare of the people of the city, are prior and superior to obligations and liabilities of the ordinary kind. It is not claimed by the appellant that anyone having such superior claim has been omitted from the scope and purpose of the ordinance.

The allegation that the title of the ordinance is defective is, in our opinion, without merit. Moreover, it is not mentioned in the assignments of error, nor in the argument of counsel, written or oral, and we, therefore, consider the objection abandoned by the appellant.

Upon the whole record, whether viewed from the standpoint of the formal assignments of error or the particular allegations in the complaint against the validity of the ordinance, we are of the opinion that the findings and conclusions of the trial court are sustained by a clear preponderance of the evidence, and that the judgment declaring ordinance No. 64981 to be a valid ordinance of the city, and dismissing the action with prejudice, is in all respects correct. Affirmed.

BEALS, C. J., MAIN, HOLCOMB, and MILLARD, JJ., concur.

GERAGHTY, J. (concurring in the result)—While I concur in the result reached in the majority opinion, I do not find myself in agreement with those portions of the opinion which imply that the ordinance under attack finds support in the existence of an emergency, or in the fact that the services for the payment of which the bonds are to be sold, were rendered by police and firemen. The latter part of the opinion, upholding the power of the city council to pass the ordinance as a proper exercise of its discretion in the management of the city's finances, is entirely right, and in my opinion, is all that the court was called upon to say.

The problem confronting the city of Seattle by reason of the court's decision in the case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, would be precisely the same if any group of city employees other than police and firemen had been required under compulsion to waive a part of their compensation as fixed by existing salary ordinances. The city would be faced with the problem of meeting a present indebtedness, either by an issue of warrants, payable in order as funds accrued, or by the sale of bonds to raise funds for immediate payment. The apparent legal obstacle to the sale of bonds is the fact that the city has already passed its constitutional limit of indebtedness. But the proposed bonds do not create an additional debt, since the proceeds are to be used exclusively in the satisfaction of an existing valid debt.

STEINERT, J., concurs with GERAGHTY, J.

TOLMAN, J. (dissenting)—Without committing myself as to the other points involved, in my opinion one of the reasons advanced by the appellant to demonstrate that the ordinance is invalid is unanswerable. That reason is that the ordinance, by setting aside the

proceeds of the bond issue to pay the amounts due to policemen and firemen for services heretofore rendered, thereby creates an unlawful preference, and places these particular employees in a class by themselves, to be paid in spot cash as soon as the bonds are sold; while all other employees of the city and all of its other general creditors have accepted and must accept warrants, and must await their turn as warrants on the general fund are called in the order of their issuance.

Section 4118, Rem. Rev. Stat. [P. C. § 5471], among other things, provides:

"Whenever the treasurer of any county, city, town, or other municipality shall have in his hands, as such treasurer, the sum of five hundred dollars belonging to any fund upon which warrants are outstanding, it shall be his duty to make a call for such warrants to that amount in the order of their issue, . . ."

In the case of *Munson v. Mudgett,* 15 Wash. 321, 46 Pac. 256, this act was upheld, and in *State ex rel. Thurston County v. Department of Labor and Industries,* 167 Wash. 629, 9 P. (2d) 1085, again upholding the statute, it was said:

"It is elementary that the duties and powers of a municipal corporation relating to the payment or disbursement of public funds are wholly regulated by statute. Under our statute, a municipal corporation is required to disburse public funds and pay its obligations by warrant. It can pay in no other manner. Nor can it prefer one warrant over another, but is required to pay them serially and in the order of their issuance."

As appears from the majority opinion and from the case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, warrants should have been issued to these policemen and firemen at the time the services were rendered; and had those employees

taken the proper steps, warrants would then have been issued to them. Under the statute from which I have quoted, those warrants would have been called in the order of their issuance. Possibly even now, warrants might be issued *nunc pro tunc* as of the date when the services were rendered; but even so, under the statute those warrants would still be payable along with all other warrants on the general fund in the order of their issuance.

It will not do to say that the services of policemen and firemen are any more a necessity than the services of other employees of the city, such as those concerned with the city health and sanitation, the maintaining of the streets and sidewalks, and other like activities.

From the beginning of statehood, municipal employees have all alike been paid, without preference one over the other, out of the general fund. I know of no statute law which authorizes any other or different method of payment; and to permit the city to segregate those having claims against the general fund into classes and to prefer one class over any other, might result in very grave injustice and a very deplorable situation. The statute, by its terms, forbids any such preference. The municipalities of the state are the creatures of the legislature, and they must obey its mandate.

It may be, as found by the trial court, that the issuance of warrants for the back pay due these policemen and firemen would demoralize the city's finances and endanger public safety, but the same relief could be obtained by providing for a bond issue of the same amount to replenish the general fund and to retire outstanding warrants against it in the order of their issuance, leaving the city's finances in exactly as good condition as if their present plan were consummated, while the result would be to retire old warrants in the

order of their issuance, placing all employees of the city and all of its general creditors on an equality. It has been said that equality is equity, and it seems certain that the city's affairs will be better administered if all are treated equally and no creditor is preferred over another.

It is true, as stated by the majority, that the appellant is not a creditor; but he is a taxpayer, and as such, he has a legal right to maintain an action to enjoin the unlawful disbursement of the public funds to which he is a contributor. Since the statute forbids any preference, there is here an attempt to unlawfully disburse eight hundred and fifty thousand dollars, which concerns every taxpayer, and therefore, in my opinion, the judgment should be reversed, with directions to enter a judgment enjoining the city from issuing the bonds for the purpose designated by the ordinance.

BLAKE, J., concurs with TOLMAN, J.